# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-450V
UNPUBLISHED

SANDRA MERCHANT,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Chief Special Master Corcoran

Filed: October 7, 2022

Special Processing Unit (SPU);
Decision Awarding Damages; Pain
and Suffering; Influenza (Flu)
Vaccine; Guillain-Barré syndrome
(GBS)

*Emily Beth Ashe, Anapol Weiss, Philadelphia, PA , for Petitioner.*

*Mallori Browne Openchowski, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On April 17, 2020 Sandra Merchant (formerly Gillingham) filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she experienced Guillain Barré syndrome ("GBS") as a result of an influenza ("flu") vaccination administered on November 9, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. Although entitlement was conceded, the parties could not agree on damages, so the disputed component of actual pain and suffering was submitted to SPU Motions Day.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on damages in this matter, I find that Petitioner should receive damages in the amount of $170,000.00, representing compensation for Petitioner's actual pain and suffering, plus $1,473.24 in lost wages and unreimbursed expenses of $1,401.08 (agreed to by the parties).

## I.    Relevant Procedural History

As noted above, the case was initiated in April 2020. On January 11, 2021, Respondent filed a Rule 4(c) report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 21. Accordingly, on January 14, 2021, I issued a ruling on entitlement in Petitioner's favor. ECF No. 22. After attempting to informally resolve the issue of damages for over a year, the parties informed me in May 2022 that they could not do so. ECF No. 48. I therefore provided the parties an opportunity to file written briefs, and scheduled this matter for an expedited hearing and ruling. ECF Nos. 48, 61, Hearing Order (Non-PDF) filed September 21, 2022.

The hearing was held on September 30, 2022, and the only disputed damages component was pain and suffering.[3] Petitioner requests that I award her $200,000.00 for past pain and suffering. ECF Nos. 56, 60. Respondent proposes that I award the lesser amount of $95,000.00 for actual pain and suffering. ECF No. 58. The parties agreed to an award of $1,473.24 in lost wages and unreimbursed expenses of $1,401.08. ECF No. 58 at 1, n.1.

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which-- (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-

---

[3] The transcript of the September 30, 2022 Hearing in this case was not yet filed as of the date of this Decision but is incorporated by reference herein.

1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Prior pain and suffering awards in comparable cases also bear on the findings reached herein. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.    Appropriate Compensation in this Case

In this case, awareness of the injury is not disputed. The record reflects that at all times, Petitioner was a competent adult with no impairments that would impact her awareness of his injury. I thus analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole to include the medical records and affidavits filed and all assertions and argument made by the parties in written documents and at the expedited hearing held on September 30, 2022. I also considered prior awards for pain and suffering in both SPU and non-SPU GBS cases, and rely upon my experience in adjudicating those cases.[5] However, I ultimately base my

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through July 1, 2022 reveals the median amount awarded to be approximately $ 171,248.72. These awards have typically ranged from approximately $129,751.58 to $250,000.00, representing cases between the first and third quartiles.

determination on the circumstances of this case.

Here, the record shows that Petitioner, a 57-year-old Montana resident visiting Oregon for the Thanksgiving holiday with her 12-year-old son, presented on November 23, 2018 (approximately two weeks after her flu vaccination) to urgent care. Petitioner reported a five-day history of progressive weakness and numbness in her legs. Ex 2 at 3. Petitioner's presentation was "concerning enough" for her to be sent immediately to the hospital emergency department ("ED"). *Id.* at 4. Petitioner's attending physician at the ED noted that her condition was "consistent with demyelinating disease process and likely Guillain-Barre syndrome." Ex. 3 at 3. She was admitted to the hospital and on November 24, 2018, underwent a lumbar puncture which revealed elevated protein. Ex. 3 at 8, 13-14, 117.[6] Petitioner was treated at the hospital with a five-day course of IVIG therapy. Ex. 3 at 8. She was subsequently discharged from the hospital after one full week in stable condition with a diagnosis of acute inflammatory demyelinating polyneuropathy ("AIDP"), and provided a prescription to obtain a walker with wheels. *Id.*; Ex. 4.

Petitioner was evaluated post-discharge by her primary care provider on December 13, 2018. At this time, she reported that she continued to have symptoms of numbness and tingling. Ex. 5 at 245. She was assessed with GBS and generalized weakness and was referred to physical therapy. *Id.* at 246. Petitioner began physical therapy on December 19, 2018, reporting at this time that she suffered "generalized weakness throughout her upper and lower extremities," however her lower extremities were most impacted and she noted that her knees would "give way" if she attempted to knell causing her to fall to the ground. Ex. 6 at 8. Petitioner also discussed that she was not able to sleep well, her head felt "heavy," she had a pain rating of 5/10, and she had neck and upper back pain. *Id.* Petitioner reported she was taking Tylenol which temporarily helped. *Id.* On exam, Petitioner was found to have "decreased range of motion throughout the cervical spine" and "weakness noted throughout her lower extremities and core." *Id.* at 9. Other problems included an "inability to do her day-to-day activities without pain" and an "inability to sleep." *Id.* However, her potential to reach her rehabilitation goals was found to be "good." *Id.*

Ultimately, Petitioner completed five physical therapy sessions over the course of approximately one month. At her final physical therapy session on January 17, 2019, Petitioner noted her neck was "doing better" and that she had been able to engage in swimming (a low impact exercise) "at least two times a week." Ex. 6 at 4. Her physical therapist instructed her in an independent physical therapy program which she tolerated "well." *Id.* Subsequently, Petitioner was evaluated by her primary care provider on May 28, 2019. Ex. 8 at 6. Her GBS and related hospitalization were discussed, and Petitioner

---

[6] Petitioner had undergone a cervical and lumbar MRI the prior day, November 23, 2018, which revealed "no significant mass effect or spinal lesion other than some mild chronic findings." Ex. 3 at 2.

indicated that she had suffered urinary incontinence since her diagnosis. *Id.* Petitioner was provided a prescription for Detrol for her urinary incontinence, it was also noted that Petitioner's GBS may have caused her Hashimoto's disease to flare causing excessive fatigue. *Id.*

Petitioner has continued to treat for her GBS sequela, albeit intermittently, for over three and a half years since her diagnosis. While she has made a good recovery in general, her GBS has caused her to require ongoing treatment for urinary incontinence. Ex. 17 at 2, 4-5 (primary care record from February 2, 2022 discussing that Petitioner still had ongoing, although not severe, GBS related issues). In addition to taking the medication Detrol (tolterodine), Petitioner has required numerous and ongoing Emsella[7] treatments to manage her incontinence. Between October 3, 2019, and May 11, 2022, Petitioner has required a total of eleven Emsella treatments to manage her incontinence related to her GBS. Ex. 17 at 2, 4-5; Ex. 9 at 5; Ex. 15 at 1; Ex. 18 at 1; Ex. 19 at 1; Ex. 20 at 1.

In making my determination, I have fully considered Petitioner's sworn affidavit, filed July 1, 2022, which describes the pain experienced by Petitioner over the course of her injury, as well as the limitations in her exercise of daily functions and physical activities attributed to her GBS. Ex. 21. That affidavit also describes personal circumstances that magnified the suffering and emotional distress she experienced as a result of her GBS.

In particular, Petitioner has stated that before her injury, she owned (with her former husband) a small farm with animals, which she states she was forced to sell in 2020 as she could no longer maintain it following her injury. Ex. 21, ¶¶14, 18. Petitioner has also filed a Warranty Deed evidencing this sale. Ex. 24. Petitioner describes the additional personal stress of experiencing the onset of a severe injury away from her home over a Thanksgiving holiday with her minor child. *Id.,* ¶11. She was delayed returning home, and experienced travel complications as a result of her injury. *Id.,* ¶¶12-13. Petitioner's affidavit also details the unique distress she experienced as the result of not being able to fully parent her autistic son, who was unable to fully comprehend the nature of her injury while it was unfolding (especially at the time of its onset). *Id.,* ¶15. Additionally, as a result of her GBS, Petitioner was delayed in starting a new job which later impacted her eligibility for unemployment benefits after she was furloughed due to the Covid-19 Pandemic. *Id.,* ¶16. Finally, Petitioner in her affidavit discusses how her urinary incontinence has changed her life, requiring her to plan activities around bathroom access and wear pads as a safety measure.  *Id.,* ¶20.

---

[7] Emsella is a "chair [that] uses electromagnetic stimulation to strengthen the pelvic floor muscles for the patient to gain more control and prevent frequent urination." https://406medspa.com/services/pelvic-floor-tightening/ (last visited October 6, 2022). This is the website for Allure Aesthetics the clinic at which Petitioner received Emsella treatments. *See, e.g.*, Ex. 9.

As I informed the parties during the expedited hearing, the question in this case is not whether Petitioner is entitled to *any* compensation for his pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (based upon the determination that the parties' respective positions reasonably "frame" high and low potential awards), each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Petitioner's personal circumstances.

Based upon the record as a whole, I find that the severity and duration of Petitioner's GBS symptoms warrant a significant pain and suffering award, although not quite at the level requested by Petitioner.

In her brief, Petitioner cites four prior GBS damages decisions, but argues that that her clinical course was more severe than the petitioners in those cases. ECF No. 56 at 8-9 (citing *Johnson v. Sec'y of Health & Human Servs.*, No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July, 20, 2018) (awarding $180,000.00 for actual pain and suffering); *Presley v. Sec'y of Health & Hum Servs.,* No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. March 23, 2020) (awarding $180,000.00 for past pain and suffering); *Devlin v. Sec'y of Health & Hum Servs.,* No. 19-0191V, 2020 WL 5512505 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $180,000.00 for past pain and suffering); and *Gross v. Sec'y of Health & Hum Servs.*, No. 19-0835V, 2021 WL 2666685 (Fed. Cl. Spec. Mstr. March 11, 2021), *review denied*, 154 Fed. Cl. 109 (2021) (awarding $160,000.00 for past pain and suffering).[8]

Respondent in reaction argues that Petitioner's injury was less severe than any of the cases cited by Petitioner. ECF No. 58 at 9.  However, in his brief Respondent cites no comparable case, but instead states he "has reviewed and conceded a number of flu/GBS cases and considers $95,000.00 to be an appropriate award given the facts of this case when compared to other more severely injured petitioners." *Id.*[9]

---

[8] Petitioner mistakenly indicates in her brief that the Petitioner was awarded $180,000 for past pain and suffering. ECF No. 56 at 9.

[9] Respondent did offer a comparable case, for the first time, at the September 2022 hearing. *Shankar v. Sec'y of Health & Hum. Servs.*, No. 19-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022) (awarding $135,000.00 for past pain and suffering). While I appreciate Respondent's effort to locate a reasonable comparable, and it does have some bearing on resolution of this matter, the failure to include it in prior briefing makes it difficult to give it significant weight. Additionally, I note that this comparable represents a significantly *higher* award than Respondent suggests is appropriate to award in this case, and

I reject the implied argument of Respondent that the amounts awarded in proffered cases provide more persuasive guidelines for the award to be issued in this matter than reasoned decisions from the Court and special masters. As I have previously stated, a proffer is simply Respondent's assessment (as agreed to by Petitioner) of the appropriate amount to be awarded, and thus a special master's approval of a proffer is not akin to a reasoned evaluation of damages, issued by a neutral judicial officer, that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers do provide *some* evidence of the magnitude of awards in factually-similar actions.

I find the cases referenced by Petitioner (*Johnson*, *Presley*, *Devlin*, and *Gross*) and the single case cited by Respondent at oral argument (*Shankar*) all provide reasonable benchmarks for an award of pain and suffering in the instant case. The severity and duration of the *Shankar* petitioner's GBS was, however, milder than the injury experienced by Ms. Merchant. While there were some gaps in Ms. Merchant's treatment, these gaps in treatment were not as significant as Respondent argued,[10] and were at least partially explained by the Covid-19 Pandemic. And although the medical records support Respondent's argument that Ms. Merchant's urinary incontinence is well-managed, urinary incontinence is *facially* a significant consequence of a vaccine injury, and thus supports a larger award than even what was allowed in *Shankar* (which itself exceeds Respondent's preferred damages sum by $40,000.00).

The pain and suffering awards in Petitioner's comparables (*Johnson, Devlin,* and *Presley*) are, by contrast, slightly too high to fit the circumstances of this case, since those petitioners generally appear to have suffered more severe courses of GBS. Better comparable results are to be found in *Francesco v. Sec'y of Health & Hum Servs*., No. 18-1622V, 2020 WL 6705564 (Fed. Cl. Spec. Mstr. Oct. 15, 2020) (awarding $165,000.00 for past pain and suffering) and *Robinson v. Sec'y of Health & Hum Servs*., No. 18-0088V, 2020 WL 5820967 (Fed. Cl. Spec. Mstr. Aug. 27, 2020) (awarding $160,000.00 for past pain and suffering). However, some upward adjustment from these results is appropriate. While the *Francesco* and *Robinson* petitioners both engaged in more post-hospitalization physical therapy, the total duration of Petitioner's injury (at more than three-and-half years) was longer. Additionally, I find that the personal circumstances Ms. Merchant experienced following her GBS merits a higher award that what was awarded in those cases.

---

therefore to some extent only offers further reason to consider Respondent's proposed damages figure as unsupported.

[10] For example, Respondent argues that there is a two-year gap in Petitioner's treatment between February 2020 and February 2022. ECF No. 58 at 8. But Petitioner was seen by her primary care provider in May 2020 (Ex. 14 at 7-8 – noting urinary incontinence) and received two Emsella treatments in 2021 (Ex. 15 at 1) and one Emsella treatment in January 2022 (Ex.19 at 1).

As I explained previously to the parties during the expedited hearing, it is my view that GBS pain and suffering awards generally should be higher than those awarded to petitioners who have suffered a less frightening and physically-alarming injury, such as SIRVA. After reviewing the record and specific facts in this case, and considering the parties' arguments during the hearing, I find that $170,000.00 in compensation for past pain and suffering is reasonable based on the facts and circumstances specific to this case. This sum exceeds the amount that Respondent proposed, but is properly less than what Petitioner requested, and fits the range of sums awarded in the reasonably good comparable cases offered by the parties.

## IV.    Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I award Petitioner a lump sum payment of $172,874.32 (representing an award of $170,000.00 for Petitioner's past pain and suffering, 1,473.24 in lost wages and unreimbursed expenses of $1,401.08) in the form of a check payable to Petitioner.**

This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.